**U.S. BANKRUPTCY COURT**
District of South Carolina

Case Number: **12-05872-hb**

**Order**

The relief set forth on the following pages, for a total of 7 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**01/25/2013**



/s/ John E. Waites
US Bankruptcy Judge
District of South Carolina

Entered: 01/25/2013

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE: | C/A No. 12-05872-HB |
| | Chapter 13 |
| Judy Ann Tucker, | **ORDER** |
| Debtor(s). | |

**THIS MATTER** came before the Court for hearing on January 10, 2013, for consideration of the Chapter 13 Plan and related Motions[1] filed by the debtor, Judy Ann Tucker ("Tucker"). 21st Mortgage Corporation, as assignee of Wachovia Bank, N.A., successor-in-interest to SouthTrust Bank, N.A. and SouthTrust Mobile Services, Inc. ("21st Mortgage") filed an *Objection to Confirmation*.[2] The parties disagree on the value of Tucker's mobile home. As a result, 21st Mortgage argues that the plan does not meet the requirements of 11 U.S.C. § 1325(a)(5).[3]

## FACTS

On September 21, 2012, Tucker filed the current bankruptcy case. In the plan and related motions Tucker valued a 1995 Southern Lifestyle mobile home at $9,000.[4] 21st Mortgage claims a security interest in that mobile home and asserts that the value is $19,800.[5] The current debt exceeds $23,000.[6]

---

[1] Doc. No. 2, *Notice, Chapter 13 Plan, Motions to Value Security, Avoid Judicial Lien, Avoid a Nonpurchase-Money Nonpossessory Security Interest and Lien, and/or to Assume or Reject an Executory Contract/Unexpired Lease*, filed September 21, 2012. The form plan used in this district allows a debtor to include certain motions therein, including motions to value collateral pursuant to 11 U.S.C. § 506.
[2] Doc. No. 12, filed October 22, 2012.
[3] *Id.*; *see also* Doc. No. 23, filed January 9, 2013.
[4] Doc. No. 2, filed September 21, 2012. Tucker's testimony at the January 10, 2013 hearing indicated that the mobile home sits on a rented lot that is not included in 21st Mortgage's collateral. *See also* Exhibit 25, *Installment Note Security Agreement and Disclosure Statement*.
[5] *See* Exhibit A, *Appraisal Report*.
[6] Exhibit 25, *Installment Note Security Agreement and Disclosure Statement*. Proof of Claim filed December 31, 2012 in the amount of $23,533.35. Tucker's filings estimate the claim at approximately $26,000.

1

Tucker previously filed a Chapter 13 bankruptcy case on September 25, 2006.[7] In that case, she scheduled the same debt at issue here and in her plan valued the mobile home at $17,000.[8] An appraiser hired by 21st Mortgage appraised the same mobile home as having an estimated market value of $23,100 in 2006.[9] Tucker disputed the valuation in the prior case at a contested hearing and on the facts of that case this Court determined Tucker had not met her burden of proof under § 1325 as to plan treatment for 21st Mortgage and denied confirmation ("2006 Order").[10] Tucker later filed an amended plan valuing the mobile home at $21,500 and that plan was confirmed without objection on February 5, 2007.[11] The prior case was dismissed on October 16, 2007, before the debt to 21st Mortgage was paid and the plan completed.[12]

At the hearing held on January 10, 2013, Tucker described the current condition of the mobile home as "good or fair" overall. However, she testified that the mobile home is in need of repairs due to a tree falling on the roof, water damage, missing insulation, mold, and a hole in the floor in one bedroom, among other issues. From Tucker's description of the mobile home, the condition sounded deplorable. However, she presented numerous photographs of the property to illustrate her testimony.[13] The pictures indicated an aging mobile home, but it appeared to be well cared for considering its age. It appeared to the Court that Tucker believes the structure provides her with adequate and reliable shelter.

21st Mortgage presented the testimony and appraisal of Victor Matistic. Matistic, after qualification as an expert in the field of mobile home appraisal, testified that his appraisal report is based on National Appraisal System (N.A.S.) guidelines and, that the estimated market value

---

[7] *In re Tucker*, C/A No. 06-04196-HB (Bankr. D.S.C. 2006).
[8] *Id.* at Doc. Nos.. 17 and 18.
[9] *See* Exhibit No. 5, *Order*, case no. 06-04196-HB, filed December 20, 2006.
[10] *Id.*
[11] *In re Tucker*, C/A No. 06-04196-HB, Doc. No. 28 and 31.
[12] *Id.* at Doc. No. 42.
[13] Exhibits 1-2, 5-21, and 24.

2

of the mobile home in its current condition is $19,800. Matistic arrived at $19,800 by starting with a base price of $11,600 then adding $5,084 for listed "components"[14] and $3,083 for "accessories"[15] totaling $19,767 which he then rounded to $19,800.[16] Matistic's testimony indicated that he was quite familiar with the property and had adequately examined it during the appraisal process.

On cross-examination, Tucker's counsel questioned Matistic about whether he had sufficiently accounted for needed repairs, whether additions to the value for "accessories" and "components" should have been excluded, and regarding the condition of the home.[17] Cross-examination indicated that his appraisal is likely not perfect and may warrant some reductions in value, but overall his testimony was credible and knowledgeable and the appraisal appeared substantially accurate.

Tucker's counsel also called the Court's attention to language in the security documents, arguing that subsequent improvements to the home, any replacements of existing features of the home, and any accessories were not included as part of 21st Mortgage's collateral.[18] In contrast,

---

[14] Exhibit A, *Appraisal Report*. The "components" as listed in the appraisal report include the following: 2 walk-a-bay windows, storm door, carpeting, garden tub, side-by-side refrigerator, ice maker, range, dishwasher, furnace, air conditioner ready furnace, washer and dryer, 40 gallon water heater, curtains, 2 smoke detectors, upgraded insulation package, drawers with rollers, oak cabinets, front door, electrics, bath exhaust fans, 4 ceiling fans, stove exhaust fan, 2 vaulted ceilings, crown molding, double sink, single lever faucet, and water shut-off valves.

[15] *Id.* The "accessories" as listed in the appraisal report include the following: central air conditioning unit, metal or vinyl skirting, front wood deck with rails, metal roof, wood steps with rail, rear deck with rails, and wood steps to back deck.

[16] *Id.* The listed value of the components makes deductions for missing wheels with tires and axles with hubs.

[17] For example, Tucker testified that she had replaced the existing toilet, sink faucet, shower stall, and carpet at her own expense and made certain additions to the mobile home including installing ceiling fans, building a small roof over the porch, laying linoleum, purchasing a washer and dryer, and installing a stove exhaust fan. Tucker's testimony indicated that the porch roof, built by her brother, was not attached in any way to the mobile home.

[18] Exhibit 25, *Installment Note Security Agreement and Disclosure Statement*. Counsel for Tucker specifically pointed to the following language: "To the extent that any Collateral securing other credit extended by STMS constitutes "household goods" as that term is defined in 12 C.F.R. Section 227.12(d), and to that extent that the proceeds of the loan evidenced by this Note were not used to purchase such property, such "household goods" do not constitute any part of the Collateral for this Note."

3

21st Mortgage's counsel asserted that the language found in the documents included as collateral any additions, improvements, or replacements in the mobile home.[19]

### CONCLUSIONS OF LAW

In weighing the evidence presented by the parties, the Court acknowledges that it is Tucker's burden to establish that the requirements of confirmation pursuant to 11 U.S.C. § 1325 have been met. *See In re Namie*, 395 B.R. 594, 596 (Bankr. D.S.C. 2008) (finding "[d]ebtor bears the burden of proof at confirmation"); *see also In Re Chavis*, No. 05-10574-JW, slip op. at 4 (Bankr. D.S.C. November 18, 2005). She must meet this burden by a preponderance of the evidence. *See In re Bridges*, 326 B.R. 345, 349 (Bankr. D.S.C. 2005). It is also Tucker's burden to support her asserted value of $9,000 pursuant to 11 U.S.C. § 506. *See e.g. In re Henry*, 457 B.R. 402 (Bankr. E.D.Pa. 2011). The standard for valuation that the Court must apply is replacement value. *Associates Commercial Corporation v. Rash*, 520 U.S. 953, 963 (1997) (finding that "[i]n sum, under § 506(a), the value of property retained because the debtor has exercised the § 1325(a)(5)(B) 'cram down' option is the cost the debtor would incur to obtain a like asset for the same 'proposed ... use[.],'" and defining replacement value to mean "the price a willing buyer in the debtor's trade, business, or situation would pay to obtain like property from a willing seller."); *see also* 11 U.S.C. § 506(a)(2) (stating that "personal property securing an allowed claim shall be determined based on the replacement value of such property").

From the evidence presented, the Court cannot find that the mobile home should be valued at $9,000 as Tucker asserts, and therefore the Chapter 13 plan cannot be confirmed.

---

[19] *Id.* Counsel for 21st Mortgage specifically pointed to the following language: "Security Interest. To secure the payment and performance of all of your obligations under this Note, you hereby grant us a security interest in the property described below, all accessories now or within 20 days hereafter installed or affixed to that property, and all accessions at any time hereafter installed in or affixed to that property. (All of the property, accessories, and accessions just described and described below are sometimes referred to in this Contract as "Collateral"). *See also* S.C. Code Ann. § 36-9-102 (defining "accessions" as "goods that are physically united with other goods in such a manner that the identity of the original goods is not lost").

4

Valuation testimony from a property owner is admissible, but to sway the Court it must be persuasive. *See e.g. Matter of Davis*, 17 B.R. 547, 548 (Bankr. W.D.Mo. 1982) ("[the debtor's] opinion of value, rendered as an owner of the property with knowledge of its condition and its purchase price, is admissible in evidence under Rule 702 of the Federal Rules of Evidence and is entitled to probative weight"). While Tucker's evidence regarding the condition of the home was helpful, the $9,000 value assigned appeared to be a guess, rendering her valuation testimony unpersuasive and unsupported. The Court has considered the prior appraisal from 2006 valuing the same property at $23,100 and the $21,500 value in the 2007 confirmed plan, as well as the facts found in the Court's 2006 Order,[20] and it would seem that the mobile home should be worth less now due to wear and tear and the passage of time. However, the Court cannot quantify any assumed depreciation without evidence in support.

In contrast, 21st Mortgage presented a detailed appraisal report and expert testimony. The appraiser examined the home in its current state and valued it applying industry standards. While cross-examination revealed that his valuation may not be perfect, it is the most complete and credible evidence of value presented, and it appears far more accurate than a $9,000 valuation. Cross-examination of the appraiser indicated that a higher deduction from the $19,800 value likely could have been made for necessary repairs, but the exact amount cannot be determined by the evidence. Further, the parties disagree as to whether certain accessories and improvements are part of 21st Mortgage's collateral.[21] However, Tucker's evidence did not clearly indicate that a significant reduction is warranted and nothing in the record provides the Court with sufficient

---

[20] At that time the mobile home was already approximately 12 years old.
[21] Exhibit 25, *Installment Note Security Agreement and Disclosure Statement*.

5

information to value the mobile home as low as $9,000, or to accurately value the home without any such items included.[22]

Given that the $9,000 value included in the plan and related motions is not supported by the evidence, the Court cannot find that the plan complies with 11 U.S.C. § 1325. Therefore, confirmation must be **DENIED**. The debtor is hereby given **ten (10) days** from entry of this Order to file an amended plan.

---

[22] Doc. No. 26, filed January 15, 2013. Following the hearing, Tucker's counsel filed supplemental documentation asserting that the two porches of the home, valuing $1933, were fixtures and therefore should be excluded from the appraised value.